**FILED UNDER SEAL**

Robert W. Unikel (IL Bar #6216974)
(*pro hac vice*)
robertunikel@paulhastings.com
PAUL HASTINGS LLP
71 South Wacker Dr., 45th Floor
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Elizabeth L. Brann (CA Bar #222873)
elizabethbrann@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]

Attorneys for Defendant Google LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| VEDANTI LICENSING LIMITED, LLC, | CASE NO. 3:20-CV-01344-BEN-WVG |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F)** |
| vs. | |
| GOOGLE LLC, | Date: October 13, 2020<br>Time: 10:30 a.m.<br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A |
| Defendant. | JURY TRIAL DEMANDED |
| | [Proposed Order submitted via email to efile benitez@casd.uscourts.gov] |

NO. 3:20-CV-01344-BEN-WVG

**FILED UNDER SEAL**

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, on October 13, 2020 at 10:30 a.m., in Courtroom 5A of the United States District Court for the Southern District of California, before the Honorable Roger T. Benitez, Defendant Google LLC will and hereby does move the Court to (1) dismiss Plaintiff's claim for patent infringement of U.S. Patent No. 7,974,339 with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), (2) dismiss Plaintiff's copyright infringement claim pursuant to Rule 12(b)(6), and (3) strike portions of Plaintiff's Complaint containing privileged and confidential Google information pursuant to Rule 12(f) or this Court's inherent authority.

This motion is based on this Notice and the Memorandum of Points and Authorities contained herein. Google respectfully requests that the Court take judicial notice of the facts contained in Exhibits A-D and G-I to the Unikel Declaration relied upon in this motion. Such judicial notice is appropriate for the reasons stated in Google's concurrently filed Request for Judicial Notice.

DATED: September 8, 2020                    Respectfully submitted,


                                            By: */s/ Elizabeth L. Brann*
                                            ELIZABETH L. BRANN, Bar No.
                                            222873
                                            elizabethbrann@paulhastings.com

                                            Attorney for Defendant Google LLC

FILED UNDER SEAL

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 2

      A.    Copyright Infringement Claim................................................... 2

      B.    Patent Infringement Claim ........................................................ 3

      C.    Vedanti's Disclosure of Google's Privileged Attorney Notes.............. 4

III.  LEGAL STANDARD ............................................................................. 6

IV.   ARGUMENT ......................................................................................... 8

      A.    Vedanti's Copyright Claim Should Be Dismissed Because the
            Allegedly Infringed Source Code Does Not Have a Registered
            Copyright.................................................................................. 8

      B.    Vedanti's Patent Infringement Claim Should Be Dismissed With
            Prejudice on the Basis of Collateral Estoppel........................... 9

            1.    Claims 4 and 11 Only Add a Random Pixel Selection
                  Limitation Found Unpatentable by the PTAB......................... 12

            2.    Claims 2 and 3 Only Add Matrix Data Elements Found
                  Unpatentable by the PTAB.............................................. 13

            3.    Claims 5 and 8 Only Add Pixel Selection Limitations
                  Found Unpatentable by the PTAB........................................ 17

      C.    The Court Should Dismiss Vedanti's Patent Infringement Claim
            for Patent Claims the PTAB Found Unpatentable............................. 19

      D.    The Court Should Strike the Allegations Related to Google's
            Privileged and Confidential Attorney Notes Vedanti Improperly
            Included in Its Complaint................................................... 20

            1.    The Attorney Notes Reflect Privileged Attorney-Client
                  Communications.......................................................... 21

            2.    The Attorney Notes Are Attorney Work Product .................... 22

**FILED UNDER SEAL**

3.  Google Has Not Waived Attorney-Client Privilege or
    Work-Product Immunity for the Attorney Notes .................... 23

V.  CONCLUSION ............................................................................. 25

FILED UNDER SEAL

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Admiral Ins. Co. v. U.S. District Court,*
  881 F.2d 1486 (9th Cir. 1989)..........................................................................22

5

*Allergan, Inc. v. Sandoz, Inc.,*
  681 F. App'x 955 (Fed. Cir. 2017).....................................................................12

6

7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................6

8

*U.S. ex rel. Bagley v. TRW, Inc.,*
  204 F.R.D. 170 (C.D. Cal. 2001) ................................................................23, 25

9

10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................6

11

*ChriMar Sys. Inc. v. Cisco Sys. Inc.,*
  312 F.R.D. 560 (N.D. Cal. 2016) ......................................................................21

12

13

*Chrimar Sys. Inc. v. Ruckus Wireless, Inc.,*
  No. 16-CV-00186-SI, 2020 WL 4431787 (N.D. Cal. July 31, 2020)................16

14

*Culpepper v. Consol. Container Co. LP,*
  No. 15-125-BAJ-RLB, 2016 WL 2599128 (M.D. La. May 5, 2016) ................23

15

16

*Eli Attia & Eli Attia Architect PC v. Google, Inc., et al.,*
  Case No. 1:14-cv-274103 ...............................................................................5, 24

17

*Enovsys LLC v. Nextel Commc'ns, Inc.,*
  614 F.3d 1333 (Fed. Cir. 2010) .........................................................................11

18

19

*F.D.I.C. v. Fidelity & Deposit Co. of Md.,*
  196 F.R.D. 375 (S.D. Cal. 2000)........................................................................23

20

*Fellowes, Inc. v. Acco Brands Corp.,*
  No. 10 CV 7587, 2019 WL 1762910 (N.D. Ill. Apr. 22, 2019).............12, 13, 19

21

22

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,*
  139 S. Ct. 881 (2019) ......................................................................................8, 9

23

*Hartford Fire Ins. Co. v. Garvey,*
  109 F.R.D. 323 (N.D. Cal. 1985) ......................................................................23

24

25

*Hynix Semiconductor Inc. v. Rambus Inc.,*
  No. C-00-20905 RMW, 2009 U.S. Dist. LEXIS 67204 (N.D. Cal.
  July 29, 2009) ....................................................................................................24

26

27

*Indivior Inc. v. Dr. Reddy's Labs., S.A.,*
  752 F. App'x 1024 (Fed. Cir. 2018)...................................................................10

28

**FILED UNDER SEAL**

*Jones v. GMC*,
    24 F. Supp. 2d 1335 (M.D. Fla. 1998) .................................................. 7

*Jones v. Metro. Life Ins. Co.*,
    No. C-08-03971-JW (DMR), 2010 U.S. Dist. LEXIS 113219 (N.D.
    Cal. Oct. 15, 2010) ............................................................................... 7

*Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*,
    No. 96 Civ. 7078 (DAB), 1997 U.S. Dist. LEXIS 12597 (S.D.N.Y.
    Aug. 22, 1997) ..................................................................................... 7

*Max Sound, et al., v. Google Inc., et al.*,
    Case No. 114CV26231 (Santa Clara Super. Ct.) .............................. 24

*MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1376 (Fed. Cir. 2018) ....... 10, 11, 19

*McDermott Will & Emery LLP v. Superior Court*,
    10 Cal. App. 5th 1083, 1092 (2017) .................................................. 20

*Mpoyo v. Litton Electro-Optical Sys.*,
    430 F.3d 985 (9th Cir. 2005) .............................................................. 10

*Ohio Willow Wood Co. v. Alps South, LLC*,
    735 F.3d 1333 (Fed. Cir. 2013) ................................... 10, 11, 15, 17

*Politte v. United States*,
    No. 07-CV-1950 JLS (CAB), 2010 WL 11512354 (S.D. Cal. Mar.
    29, 2010) ...................................................................................... 21, 23

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
    627 F.3d 402 (9th Cir. 2010) ................................................................ 7

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ..................................................... 6, 7, 10

*Rico v. Mitsubishi Motors Corp.*,
    42 Cal. 4th 807 (2007) ........................................................................ 20

*Smith v. Armour Pharm. Co.*,
    838 F. Supp. 1573 (S.D. Fla. 1993) ................................................... 24

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
    778 F.3d 1311 (Fed. Cir. 2015) ...................................................... 6, 13

*State Comp. Ins. Fund v. WPS, Inc.*,
    70 Cal. App. 4th 644 (1999) ............................................................... 20

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ............................................................................ 11

*Todd v. STAAR Surgical Co.*,
    No. CV-14-05263-MWF, 2015 U.S. Dist. LEXIS 189237 (C.D.
    Cal. Aug. 21, 2015) .............................................................................. 7

**FILED UNDER SEAL**

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) .......................................................................... 21

*Vedanti Licensing Ltd. v. Google LLC*,
  756 F. App'x 994 (Fed. Cir. 2019) .......................................... 11, 19, 20

*Washoutpan.com, LLC v. HD Supply Construction Supply Ltd.*,
  No. 2:19-cv-00494-AB, 2019 WL 9050859 (C.D. Cal. Aug. 5,
  2019) ............................................................................................... 9

*XY, LLC v. Trans Ova Genetics*,
  890 F.3d 1282 (Fed. Cir. 2018) ........................................................ 10

**Statutes**

17 U.S.C. § 411(a) ......................................................................... 8, 9

35 U.S.C. § 103 ................................................................................. 3

**Rules**

Cal. Rules of Prof'l Conduct, Rule 4.4 ................................................ 20

Fed. R. Civ. P. 12(b)(6) ................................................................ 6, 25

Fed. R. Civ. P. 12(f) .............................................................. 2, 7, 20, 25

Fed. R. Civ. P. 26(b)(3) ..................................................................... 22

FILED UNDER SEAL

1    **I.    INTRODUCTION**

2          Vedanti Licensing Limited LLC ("Vedanti") tries, but ultimately fails, to

3    allege both copyright and patent infringement. First, Vedanti fails to state a viable

4    claim for copyright infringement because it does not have a registered copyright.

5    Instead, Vedanti merely filed an *application* for a copyright two days before filing

6    suit. The Supreme Court has held that a copyright *application,* by itself, is

7    insufficient to state a claim for copyright infringement. Thus, Vedanti's copyright

8    infringement claim must be dismissed.

9          Second, Vedanti's patent infringement claim fails because the Patent Trial

10   and Appeal Board ("PTAB") invalidated seven of the thirteen claims in the sole

11   patent asserted by Vedanti in this case—U.S. Patent No. 7,974,339 ("the '339

12   patent")—during *inter partes* review ("IPR"). The six remaining claims were not

13   directly at issue in the prior IPR proceedings. Collateral estoppel, however, now

14   precludes Vedanti from asserting any of the remaining six claims because those

15   claims' limitations are not materially different from those found unpatentable

16   during IPR. The remaining claims are thus invalid for the same reasons as the

17   claims already found unpatentable, and Vedanti is estopped from asserting them.

18   Moreover, Vedanti's patent infringement claim should be dismissed to the extent it

19   purports to rely on any of the '339 patent claims expressly invalidated during the

20   IPR, as is suggested in the claim chart attached to Vedanti's complaint.[1]

21         Finally, Google requests that the Court strike portions of Vedanti's

22   Complaint relating to Post-It Notes containing privileged and confidential Google

23   information. As Vedanti is aware, Google's in-house counsel inadvertently

24   provided these Post-It Notes to Vedanti Systems Ltd. ("VSL") upon the conclusion

25   of business discussions between Google and VSL. Although Google requested that

26   VSL return the Post-It Notes numerous times, VSL insisted it did not have any

27

28   ───────────────

[1] *See* Dkt. 1-4 (charting Google's alleged infringement of, among others, patent claims 1, 6, 7, 9, 10, 12, and 13, all of which were found invalid during IPR).

FILED UNDER SEAL

confidential information and sought to extort Google by threatening the notes' disclosure. Plaintiff blatantly disregards the protections afforded to the notes and Google's repeated objections to their use by including them in its Complaint. None of the information in the Post-It Notes is necessary for Vedanti to plead a claim for copyright or patent infringement, and this Court should not tolerate Vedanti's unethical behavior. Accordingly, Google respectfully requests that the Court strike the portions of Vedanti's Complaint referring to the Post-It Notes under Rule 12(f) or the Court's inherent authority, and order them removed from the public docket.

## II.    FACTUAL BACKGROUND

In littering its Complaint with inflammatory language and excerpts from privileged and confidential Google materials that should have been returned *years ago*, Vedanti attempts to distract from the deficiencies in its claims–an unregistered copyright and an asserted patent that was already eviscerated by the PTAB.

### A.    Copyright Infringement Claim

VSL first approached Google to discuss licensing the '339 patent in March 2010. Dkt. 1, ¶ 76. Shortly thereafter, VSL and Google entered a non-disclosure agreement. *Id.* ¶ 77. Vedanti alleges that, "[d]uring the course of the negotiations and pursuant to the NDA, Plaintiff provided a working VSL codec contained within the Vedanti Source Code, to Google for testing and analysis."[2] *Id.* ¶ 79. Vedanti defines the "Vedanti Source Code" as the copyrightable source code underlying its video transmission technology. *Id.* ¶ 6. Vedanti alleges that Google incorporated the Vedanti Source Code into the video encoding (*i.e.*, compression) software used for a number of Google products, and that Google's resulting use and distribution of the Vedanti Source Code through a number of products and services constitutes copyright infringement. *Id.* ¶¶ 82–84, 119–27.

---

[2] Given that the Plaintiff Vedanti entity did not exist in 2010, *see infra* at n. 3, and that the referenced business discussions took place between Google and *VSL*, *see* Dkt. 1, ¶ 76, Google understands the term "Plaintiff" in this allegation to refer to VSL (who is not a party to this litigation), as opposed to Vedanti.

**FILED UNDER SEAL**

To support its copyright infringement claim, Vedanti alleges that it "has *filed* with the United States Copyright Office for copyright protection of the Vedanti Source Code," *id.* ¶ 18, and attached to the Complaint a copy of its *application* to register the Vedanti Source Code, Dkt. 1-2. That application was filed on July 14, 2020—two days before Vedanti filed this lawsuit. *See id.* Vedanti did not allege in its Complaint that the Copyright Office had approved the application or registered its copyright; nor did Vedanti submit any determination on its application from the Copyright Office. *See* Dkt. 1. No copyright registration appears for "Vedanti" in the online records of the Copyright Office to date. *See* Declaration of Robert Unikel ("Unikel Decl."), ¶ 2, Ex. A (Copyright Office Search Results).

## B.    Patent Infringement Claim

Vedanti claims to own the '339 patent, entitled "Optimized Data Transmission System and Method." Dkt. 1, ¶¶ 22–23, 32. Constance Nash, founder of VSL, and Alex Krichevsky allegedly conceived of the claimed technology. *Id.* ¶¶ 24–30. Vedanti refers to its "invention" disclosed in the '339 patent as the "VSL Codec." *Id.* ¶ 28. Vedanti further alleges that it acquired both "VSL and 100% of the rights" in the '339 patent in September 2016.[3] Dkt. 1, ¶ 33.

In May 2016, the PTAB instituted two IPRs against claims 1, 6, 7, 9, 10, 12, and 13 of the asserted '339 patent. Dkt. 1, ¶¶ 34–35. The PTAB eventually consolidated the IPRs and, in May 2017, issued a final written decision finding all seven of the challenged claims unpatentable under 35 U.S.C. § 103. *Id.* ¶ 35; Unikel Decl., Ex. D (PTAB Final Written Decision) ("FWD") at 12–13. Six of the '339

---

[3] This allegation contradicts the assignment records for the '339 patent from the United States Patent and Trademark Office ("USPTO"), which indicate purported assignment to a different corporate entity ("Vedanti Licensing Limited (UK)") in September 2016. Unikel Decl., Ex. B ('339 Patent USPTO Assignment History). Moreover, public records indicate that the Plaintiff Vedanti entity was not formed until June 15, 2020. *Id.*, Ex. C (Vedanti LLC Registration). Nonetheless, a precise determination of when the Plaintiff Vedanti entity was formed or may have obtained rights to the '339 patent is not necessary to resolve the instant motion.

**FILED UNDER SEAL**

patent's thirteen claims were not challenged in the IPRs: claims 2–5, 8, and 11. *See* Dkt. 1, ¶ 36.

Vedanti now alleges that certain Google products and services infringe "at least six claims of the '339 patent as indicated in the . . . claim chart [attached to Vedanti's Complaint]." *Id.* ¶ 103. However, that claim chart confusingly includes *ten* claims of the '339 patent, *including all seven claims found unpatentable by the PTAB*. Dkt. 1-4 (charting claims 1–3, 6–10, and 12–13). Vedanti's claim chart only includes three of the six remaining claims of the '339 patent: claims 2, 3, and 8. *See id.* (not referring to claims 4, 5, or 11).

**C.    Vedanti's Disclosure of Google's Privileged Attorney Notes**

Vedanti's Complaint contains copies of and references to a number of Post-It Notes authored by a Google in-house attorney ("the Attorney Notes"). *See* Dkt. 1, ¶¶ 85–92, 108. When the discussions between Google and VSL ended in December 2010, a Google in-house attorney returned materials to VSL which had been provided to Google pursuant to the NDA. *See id.* ¶¶ 78, 85. Twenty-three Post-It Notes from the Google in-house attorney were inadvertently included among the materials. *See id.* ¶ 87. Upon learning of the inadvertent disclosure, Google promptly requested that VSL return the Attorney Notes. *See* Declaration of Andre Golueke ("Golueke Decl."), Ex. A. at 3 ("[I]t look[s] like you may have received Google confidential information by accident . . . please return it."); Ex. B at 18 ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Ex. C. at 24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮. Constance Nash of VSL refused to return the Attorney Notes, *see*

**FILED UNDER SEAL**

1 | *id.*, Ex. B at 15 ██████████████████████████████████████

2 | claiming that ████████████████████████████████ *id.*, Ex. C at 24.

3 |      The Attorney Notes referenced in Vedanti's Complaint contain ████████

4 | ███████████████████████████████████ *e.g.*:

5 | ██ ████████████████████████████████████

6 | ██ ████████████████████████████████████████

7 | ██ ████████████████████████████████████████

8 | ██ █████████████████████████████████

9 | Vedanti asserts that the Attorney Notes reflect ██████████████████████

10 | ███████████████████████████████████████████████████████

11 | ████

12 |      It is unclear how the Plaintiff Vedanti came to possess the Attorney Notes.

13 | However, the present suit is not the first instance where the Vedanti/VSL entities

14 | have sought to leverage the Attorney Notes against Google. For example, an

15 | August 2014 California state court complaint filed by Max Sound Corporation,

16 | VSL, and VSL Communications Ltd. also improperly referenced the Attorney

17 | Notes. *See* Declaration of Charles Tait Graves ("Graves Decl."), ¶¶ 2–3, Ex. A.  In

18 | that case, Google's counsel promptly explained to plaintiff's counsel the privileged

19 | and confidential nature of the Attorney Notes and the circumstances by which they

20 | inadvertently were provided to VSL. *Id.* ¶¶ 4–5, Exs. B–C (August 2014 Letters

21 | from Google to VSL). Plaintiffs' attorneys quickly agreed to dismiss the case and

22 | did so in September 2014. *Id.* ¶ 6.

23 |      Then again in *Eli Attia & Eli Attia Architect PC v. Google, Inc., et al.*, Case

24 | No. 1:14-cv-274103, filed in Santa Clara County Superior Court in December

25 | 2014, plaintiffs (represented by the same law firm from the 2014 Max Sound

26 | litigation) sought to improperly reference the Post-It Notes in a fourth amended

27 | complaint. Google again promptly informed plaintiffs' counsel that the notes were

28 | privileged and that "[u]nder California ethics rules, no use can be made of such

**FILED UNDER SEAL**

information." Graves Decl., ¶¶ 8–10, Exs. D–E (July 2017 Letters from Google to Eli Attia). When plaintiffs filed their fourth amended complaint, it did not reference the Post-It Notes. *Id.* ¶ 11.

Google raised the privileged nature of the Attorney Notes with Vedanti in advance of filing this motion. In that correspondence, Google informed Vedanti's counsel that the Attorney Notes contain privileged and confidential information from Google's in-house counsel and were inadvertently provided to VSL. *See* Unikel Decl., Ex. E (August 28, 2020 Letter from Google to Vedanti). Although Google reminded Vedanti's counsel of its obligations under applicable California ethics law with respect to the handling of inadvertently disclosed privileged materials, *see id.*, Vedanti refused to withdraw its Complaint and return the Attorney Notes to Google. *See id.*, Ex. F (September 1, 2020 Letter from Vedanti to Google).

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). Dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

Collateral estoppel, otherwise known as "issue preclusion," bars relitigation of issues adjudicated in an earlier proceeding. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). Regional circuit law governs the general procedural question of whether collateral estoppel applies, while Federal Circuit law governs collateral estoppel issues that implicate substantive patent law issues. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778

**FILED UNDER SEAL**

1   F.3d 1311, 1314 (Fed. Cir. 2015). For collateral estoppel in the Ninth Circuit, three

2   requirements must be met:

> (1) the issue necessarily decided at the previous proceeding is
> identical to the one which is sought to be relitigated; (2) the first
> proceeding ended with a final judgment on the merits; and (3) the
> party against whom collateral estoppel is asserted was a party or in
> privity with a party at the first proceeding.

6   *Reyn's Pasta Bella*, 442 F.3d at 746.

7   Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a

8   pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

9   Civ. P. 12(f). "The purpose of the rule is to 'avoid . . . prejudice to a party by

10  preventing a jury from seeing the offensive matter or giving the allegation any

11  unnecessary notoriety.'" *Todd v. STAAR Surgical Co*., No. CV-14-05263-MWF

12  (RZx), 2015 U.S. Dist. LEXIS 189237, at *12–13 (C.D. Cal. Aug. 21, 2015)

13  (citation omitted). "A district court may strike from a complaint those allegations

14  that impermissibly disclose or describe attorney-client privileged communications

15  or work product." *Id*.; *see also Jones v. GMC*, 24 F. Supp. 2d 1335, 1339 (M.D.

16  Fla. 1998) (granting motion to dismiss or strike claim that was "impermissibly

17  based on attorney-client privileged materials"); *Major League Baseball Props., Inc.*

18  *v. Opening Day Prods., Inc.*, No. 96 Civ. 7078 (DAB), 1997 U.S. Dist. LEXIS

19  12597, at *6 (S.D.N.Y. Aug. 22, 1997) (finding that the inclusion in pleadings of

20  part of a statement protected under attorney-client privilege was prejudicial and so

21  should be struck under Rule 12(f)).

22  Further, the Court need not rely solely on Rule 12(f) to strike confidential or

23  privileged communications; rather, the Court has inherent authority to do so. *See*

24  *Jones v. Metro. Life Ins. Co.*, No. C-08-03971-JW (DMR), 2010 U.S. Dist. LEXIS

25  113219, at *16 (N.D. Cal. Oct. 15, 2010) (applying the court's "inherent power to

26  strike inappropriate materials such as confidential mediation and settlement

27  information that are improperly part of the public record"); *Ready Transp., Inc. v.*

28  *AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) ("We conclude that the District

FILED UNDER SEAL

1  Court had jurisdiction to grant the motion to strike [an improperly filed confidential

2  document] pursuant to its inherent powers.").

3  **IV.   ARGUMENT**

4        **A.   Vedanti's Copyright Claim Should Be Dismissed Because the**
              **Allegedly Infringed Source Code Does Not Have a Registered**
5             **Copyright**

6        Vedanti's copyright infringement claim should be dismissed because Vedanti

7  filed this lawsuit before the Copyright Office actually approved Vedanti's

8  application and registered a copyright for the so-called "Vedanti Source Code."[4]

9        The Copyright Act provides that "no civil action for infringement of the

10 copyright in any United States work shall be instituted until . . . registration of the

11 copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a).

12 The Copyright Act thus explicitly requires a copyright owner to wait until the

13 Copyright Office has approved an application for registration before bringing an

14 infringement action. The U.S. Supreme Court has made clear that the filing of a

15 copyright *application* alone is insufficient to confer the ability to file a lawsuit. *See*

16 *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888–89

17 (2019) (holding that under the Copyright Act, copyright registration occurs—and

18 thus an infringement action can only be brought—once the Copyright Office

19 actually approves a copyright application and registers a copyright).[5]

20

21 _____

[4] Vedanti did not include a copy of the "source code" for which it has sought
22 copyright protection with its Complaint. Accordingly, any reference in this motion
   to the subject of Vedanti's copyright application as "Vedanti Source Code," is
23 based on Vedanti's own language from its Complaint, *see* Dkt. 1 at 2, ¶ 6 (defining
   "Vedanti Source Code"), and is not an admission or acknowledgment by Google
24 regarding the nature of any material Vedanti may have submitted to the Copyright
   Office in connection with its application—including with respect to whether that
   information *actually* constitutes source code, was authored by Vedanti, is owned by
25 Vedanti, or is otherwise copyrightable.
[5] In *Fourth Estate*, the Supreme Court considered whether "'registration . . . [has]
26 been made in accordance with [Title 17]'" as soon as the claimant completes the
   required application, or only after the Copyright Office reviews the application and
27 registers the copyright. *Id.* at 886. Concluding that the latter interpretation was
   correct, the Court held that "registration occurs, and a copyright claimant may
   commence an infringement suit, when the Copyright Office registers a copyright."
28 *Id.* Merely filing a copyright application does not constitute registration. *See id.* at

**FILED UNDER SEAL**

Vedanti acknowledges in its Complaint that it did not file its copyright application for the "Vedanti Source Code" until July 14, 2020—a mere *two days* before filing its Complaint in this matter. *See* Dkt. 1, ¶ 18; Dkt. 1–2. To date, there is no copyright registration for "Vedanti" in the online records of the United States Copyright office. *See* Unikel Decl., ¶ 2, Ex. A (Copyright Office Search Results). Accordingly, Vedanti's copyright infringement claim should be dismissed because Vedanti filed the present suit before the Copyright Office approved Vedanti's application and registered its copyright. *Fourth Estate*, 139 S. Ct. at 888–89.

Tellingly, Vedanti's Complaint does not even *allege* that the Copyright Office had registered its copyright before this action was filed. *See* Dkt. 1. "To state a claim of copyright infringement, a plaintiff must allege (1) ownership of a valid copyright in the subject work and (2) 'copying of constituent elements of the work that are original.' 'To plead ownership, [Plaintiff] must plausibly allege it owns a valid copyright *registration* for its work.'" *Washoutpan.com, LLC v. HD Supply Construction Supply Ltd.*, No. 2:19-cv-00494-AB (JEMx), 2019 WL 9050859, at *2 (C.D. Cal. Aug. 5, 2019) (citations omitted). Because Vedanti has not alleged, and cannot properly allege, that it owns a valid copyright registration—Vedanti alleges only that its code is copyright*able*, *see* Dkt. 1, ¶¶ 6, 119, 121, 126—its copyright infringement claim must be dismissed for failure to state a claim.

**B.    Vedanti's Patent Infringement Claim Should Be Dismissed With Prejudice on the Basis of Collateral Estoppel**

Vedanti's patent infringement claim should be dismissed with prejudice because all six remaining claims of the '339 patent (*i.e.*, 2–5, 8, and 11) are invalid on the basis of collateral estoppel. The PTAB determined that seven of the thirteen claims of the '339 patent are unpatentable in the prior IPR proceedings. FWD at 3–4. "Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-

888–89 (explicitly rejecting the argument that a completed application satisfies the "registration" requirement of § 411(a)).

**FILED UNDER SEAL**

opponent." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). "[A]s a result of collateral estoppel, a judgment of invalidity in one patent action renders the patent invalid in any later actions based on the same patent." *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) (citation omitted). Collateral estoppel can be equally applied on the basis of administrative decisions by the U.S. Patent and Trademark Office, including in IPR proceedings. *Id.*; *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (holding that "an affirmance of an invalidity finding, whether from a district court or the Board [in a final written decision in an *inter partes* review proceeding], has a collateral estoppel effect . . ."). Application of collateral estoppel is not limited to patent claims that are identical, "[r]ather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood*, 735 F.3d at 1342.

Here, all three Ninth Circuit requirements for the application of collateral estoppel are satisfied:

(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated;

(2) the first proceeding ended with a final judgment on the merits; and

(3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Reyn's Pasta Bella*, 442 F.3d at 746.[6]

---

[6] Claim preclusion is similarly applicable to the six remaining claims of the '339 patent. The Ninth Circuit's three-part test for claim preclusion does not substantially differ for present purposes from the test for collateral estoppel (a.k.a. "issue preclusion"). *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (requiring (1) the same claim or cause of action, (2) a final judgment on the merits, and (3) identical parties or parties in privity). Indeed, the critical question is functionally equivalent in both contexts, namely whether the remaining claims are patentably distinct (*i.e.*, have any material differences) from the claims found unpatentable. *Compare Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 F. App'x 1024, 1034–35 (Fed. Cir. 2018), *with Ohio Willow Wood*, 735 F.3d at 1342. While this motion analyzes the claims of the '339 patent in the context of issue preclusion, claim preclusion also renders the six remaining claims invalid.

FILED UNDER SEAL

1      The *second* requirement is satisfied because the prior IPR proceeding

2  involving the '339 patent resulted in a final written decision deeming all challenged

3  claims (*i.e.*, 1, 6, 7, 9, 10, 12, and 13) unpatentable. FWD at 3–4. The Federal

4  Circuit affirmed the PTAB's final written decision. *See Vedanti Licensing Ltd. v.*

5  *Google LLC*, 756 F. App'x 994, 995 (Fed. Cir. 2019).

6      The *third* requirement is also satisfied because Vedanti at least was in privity

7  with a party in the IPR. VSL, a purported prior owner of the '339 patent, initially

8  participated as the patent owner in the prior IPR proceeding. *See* Unikel Decl., Ex.

9  G (Patent Owner's Dec. 9, 2015 Mandatory Notices) at 130. During the IPR

10  proceeding, Vedanti Licensing Limited (UK) purportedly took ownership of VSL

11  and was purportedly assigned VSL's interest in the '339 patent. *See* Unikel Decl.,

12  Ex. H (Patent Owner's Aug. 11, 2016 Updated Mandatory Notice) at 135; Ex. I

13  (Patent Owner's Jan. 12, 2017 Third Updated Mandatory Notice) at n.1. Following

14  the conclusion of the IPR proceeding, Vedanti Licensing Limited (UK) purportedly

15  assigned its interest in the '339 patent to Plaintiff Vedanti. *See* Unikel Decl., Ex. B

16  ('339 Patent USPTO Assignment History). Thus, Vedanti necessarily is in privity

17  with its purported predecessors-in-interest, including VSL and Vedanti Licensing

18  Limited (UK). *See Enovsys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1343

19  (Fed. Cir. 2010); *see also Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("[N]onparty

20  preclusion may be justified based on a variety of pre-existing 'substantive legal

21  relationship[s]' . . . includ[ing], but . . . not limited to, preceding and succeeding

22  owners of property, . . . and assignee and assignor" (second alteration in original)).

23      With respect to the *first* requirement, the Federal Circuit has held that

24  collateral estoppel applies to patent claims not considered in previous proceedings

25  "[i]f the differences between the unadjudicated patent claims and adjudicated patent

26  claims do not materially alter the question of invalidity." *Ohio Willow Wood*, 735

27  F.3d at 1342; *see also MaxLinear*, 880 F.3d at 1377 ("[T]he collateral-estoppel

28  effect of an administrative decision of unpatentability generally requires the

FILED UNDER SEAL

1  invalidation of related claims that present identical issues of patentability."). As

2  detailed below, the six remaining, unadjudicated claims of the '339 patent (*i.e.*,

3  claims 2–5, 8, and 11) all depend on independent claims found unpatentable during

4  the IPR proceeding, and include limitations that do not materially differ from

5  limitations in the adjudicated claims. Collateral estoppel therefore bars Vedanti's

6  patent infringement claim, which should be dismissed with prejudice. *See, e.g.*,

7  *Allergan, Inc. v. Sandoz, Inc.*, 681 F. App'x 955, 957, 964 (Fed. Cir. 2017)

8  (affirming dismissal with prejudice on the basis of collateral estoppel).

9
10
### 1.  Claims 4 and 11 Only Add a Random Pixel Selection Limitation Found Unpatentable by the PTAB

11  Claims 4 and 11 are invalid on the basis of collateral estoppel.  Both claims

12  only add a single limitation to the invalidated claims from which they depend. This

13  additional limitation—random pixel selection—was addressed by the PTAB during

14  the prior IPR proceeding in the context of a newly proposed claim. As shown

15  below, claims 4 and 11 overlap with unpatentable proposed claim 16:

16
17
| Claims 4 and 11 Limitations | Previously-Invalidated Claim Limitations |
|---|---|
| Claim 4<br>"wherein the pixel selection system comprises a pixel Randomizer system receiving two or more sets of pixel data for each region and randomly selecting one of the two or more sets of pixel data"<br><br>Claim 11<br>"wherein selecting the set of pixel data from each region comprises selecting a random set of pixel data" | Proposed Claim 16<br>"selecting a non-predetermined set of pixel data from each region to produce selection pixel data for each region" |

18
19
20
21
22

23  Claims 4 and 11 both require selecting a single set of pixel data at random

24  from a region containing multiple sets of pixel data. Although claim 4 refers to this

25  as a "pixel Randomizer system," both claims include functionally equivalent

26  limitations. *See Fellowes, Inc. v. Acco Brands Corp.*, No. 10 CV 7587, 2019 WL

27  1762910, at *7 (N.D. Ill. Apr. 22, 2019) (finding no material difference between a

28  limitation with a "thickness detector" and a limitation in a different claim with a

FILED UNDER SEAL

1  "<u>variable</u> thickness detector") (emphasis added). Claims 4 and 11 depend on

2  invalidated claims 1 and 10, respectively.

3      During the IPR proceeding, VSL proposed claim 16 as a substitute for

4  unpatentable claim 10. VSL conceded that "random pixel selection . . . is a type of

5  'selecting a non-predetermined set of pixel data,'" as claimed in proposed claim 16.

6  FWD at 49. VSL did not contest that one of the prior art references asserted in the

7  prior IPR proceeding discloses random pixel selection. *Id.* at 48 ("Regarding the

8  term 'non-predetermined' in proposed claim 16, Vedanti acknowledges [one of the

9  asserted prior art references] discloses random pixel selection . . . ."). Instead, VSL

10 proposed claim 16 based on an alleged inability to combine the two prior art

11 references asserted in the prior IPR proceeding. *Id.* at 48–49. The PTAB rejected

12 VSL's argument and found proposed claim 16 unpatentable. *Id.* at 49–50.

13     Because the PTAB found random pixel selection unpatentable in the context

14 of proposed claim 16, its presence in claims 4 and 11 does not materially alter the

15 question of invalidity. *See Soverain Software*, 778 F.3d at 1320 (applying collateral

16 estoppel to dependent claim that added limitation regarding transmission over

17 Internet where previously invalidated claim included transmission over generic

18 network). Claims 4 and 11 are therefore invalid on the basis of collateral estoppel.

19          **2.     Claims 2 and 3 Only Add Matrix Data Elements Found**
                      **Unpatentable by the PTAB**
20
21     Claims 2 and 3 of the '339 patent are also invalid on the basis of collateral

22 estoppel. Both claims depend on invalidated claim 1 and respectively claim a

23 "matrix size system" for "generating matrix size data" and a "matrix identification

24 system" for "generating matrix identification data." Unikel Decl., Ex. J ('339

25 patent) at 11:10–15. These limitations do not materially differ from limitations

26 found unpatentable during the prior IPR proceeding. FWD at 29–34 (finding claims

27 7 and 13 unpatentable).

28

FILED UNDER SEAL

The elements of claim 2 overlap with limitations in unpatentable claims 7 and 13:

| Claim 2 Limitations | Previously Invalidated Claim Limitations |
|---|---|
| "receiving pixel variation data" | Claim 13<br>"a pixel variation system receiving two or more sets of pixel data and generating the region data based on pixel variation data from the two or more sets of pixel data" |
| "generating matrix size data" | Claim 7<br>"wherein generating the optimized matrix data from the frame data comprises *setting a matrix size* based on pixel selection data" (emphasis added)<br><br>Claim 13<br>"generating the region data based on pixel variation data" |

Dependent claim 2 requires a "matrix size system" that (1) "receiv[es] pixel variation data," and (2) "generat[es] matrix size data." '339 patent at 11:10–12. The first requirement of receiving pixel variation data does not materially differ from the limitation in unpatentable claim 13, which also depends on claim 1. *See id.* at 12:30–33; FWD at 32–34. Claim 13 describes receiving pixel data that includes pixel variation data (or from which pixel variation data can be derived). '339 patent at 12:30–33. During the IPR proceeding, VSL did not dispute that the asserted prior art references disclose the limitation added by claim 13. FWD at 33. The PTAB accordingly found claim 13 unpatentable. *Id.* at 33–34. Because unpatentable claim 13 includes receiving pixel variation data, the functionally equivalent element in claim 2 does not materially alter the question of invalidity.

The second requirement of claim 2—generating matrix size data—also does not materially alter the question of invalidity. Unpatentable claim 7 includes a limitation requiring "setting a matrix size." '339 patent at 12:1–2. The PTAB found claim 7 unpatentable in view of the combination of prior art references asserted in the IPR proceeding. FWD at 29–32.

**FILED UNDER SEAL**

The "setting a matrix size" portion of unpatentable claim 7 does not materially differ from "generating matrix size data" in claim 2. The '339 patent specification uses a variety of verbs interchangeably to refer to the action of setting matrix size. '339 patent at 2:18–19 ("determining or assigning matrix or region size"), 3:52 ("generates matrix size data"), 3:56 ("select a matrix size"), 5:67–6:1 ("identify a . . . size data for matrices"). Nothing in the specification indicates a material difference between "setting" and "generating" matrix size. *See Ohio Willow Wood*, 735 F.3d at 1342 (applying collateral estoppel where "patents use slightly different language to describe substantially the same invention").

Even if claim 2 required generating matrix size data *based on* pixel variation data (which it does not), unpatentable claim 13 does not materially differ. It claims "generating the region data *based on* pixel variation data." '339 patent at 12:32–33 (emphasis added). The '339 patent specification makes clear that "region data" can include the "matrix size data" from claim 2. *Id.* at 9:7–11 ("Method 700 begins at 702 where *matrix or other region data* is received. In one exemplary embodiment, the matrix data *can include a matrix size, a region size*, a region boundary for amorphous regions, or other suitable data.") (emphasis added). Because the two unconnected requirements of claim 2 appear without material difference in claims found unpatentable by the PTAB, the question of invalidity is not materially altered. Collateral estoppel therefore renders claim 2 invalid.

Collateral estoppel similarly applies to claim 3 because its elements overlap with those of claims found unpatentable:

| Claim 3 Limitations | Previously Invalidated Claim Limitations |
|---|---|
| "receiving matrix size data" | Claim 1<br>"receiving matrix definition data"<br><br>Claim 7<br>"wherein generating the optimized matrix data from the frame data comprises setting a matrix size based on pixel selection data; |

**FILED UNDER SEAL**

| | transmitting the . . . the optimized matrix data" |
|---|---|
| "generating matrix identification data" | <ins>Claim 10</ins><br>"dividing an array of pixel data into two or more regions;<br>. . . .<br>wherein dividing the array of pixel data comprises dividing the array of pixel data into two or more matrices having a uniform size;<br>wherein dividing the array of pixel data comprises dividing the array of pixel data into two or more matrices having two or more different sizes;<br>and transmitting the region data"<br><br><ins>Claim 12</ins><br>"wherein transmitting the region data and the pixel data for each region comprises transmitting matrix data and the pixel data for each matrix" |

Like claim 2, claim 3 describes a system (namely, a "matrix identification system") with two requirements: (1) "receiving matrix size data," and (2) "generating matrix identification data." '339 patent at 11:13–15. As explained above with respect to claim 2, the PTAB found "matrix size data" unpatentable in the context of claim 7. The unpatentable claims of the '339 patent also describe transmitting and receiving such matrix data. Claim 7 requires "transmitting . . . the optimized matrix data," including the data about "matrix size." *Id.* at 12:1–6. Claim 1 requires "receiving matrix definition data." *Id.* at 11:1–4. Together, unpatentable claims 1 and 7 do not have any material difference for purposes of invalidity from the first requirement of claim 3—receiving matrix size data. *See Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*, No. 16-CV-00186-SI, 2020 WL 4431787, at *5 (N.D. Cal. July 31, 2020) (relying on limitations from two previously adjudicated claims to find claim invalid due to collateral estoppel).

The second requirement of claim 3—generating matrix identification data—does not materially differ from limitations found unpatentable in claims 10 and 12. The '339 patent specification explains that "matrix identification data" is used by the "data receiving system []" to generate the optimized display data." '339 patent at 6:14–16. The specification further explains that matrix identification data can

FILED UNDER SEAL

include "whether a uniform matrix size is being generated, the number of matrices within a frame, sequence data for the matrices when a non-uniform matrix or region is being used, or other suitable data." *Id.* at 6:10–13. In other words, the matrix identification data explains how a given frame of data is broken out into separate matrices.

Unpatentable claims 10 and 12 include limitations describing the generation and transmission of matrix identification data. Specifically, claim 10 requires "dividing an array of pixel data [*i.e.*, a frame] into two or more regions [*i.e.*, matrices]." '339 patent at 12:14. It further requires dividing the frame into "two or more matrices having a uniform size" and "two or more matrices having two or more different sizes." *Id.* at 12:16–21. Claim 10 then requires "transmitting the region data" (*i.e.*, the matrix identification data). *Id.* at 12:22. Dependent claim 12 clarifies that the "region data" includes "matrix data . . . for each matrix." *Id.* at 12:27–29. The combination of claims 10 and 12 therefore discloses generating data that identifies how a frame is divided into matrices, which does not materially differ from what claim 3 requires. The PTAB found claims 10 and 12 unpatentable in light of the combination of prior art references asserted in the IPR proceeding. FWD at 32 (finding claim 10 unpatentable), 33–34 (finding claim 12 unpatentable).

The two requirements of claim 3 do not materially differ from limitations in claims the PTAB found unpatentable. Accordingly, claim 3 is invalid on the basis of collateral estoppel. *See Ohio Willow Wood*, 735 F.3d at 1342.

### 3. Claims 5 and 8 Only Add Pixel Selection Limitations Found Unpatentable by the PTAB

Claims 5 and 8 of the '339 patent both depend on claims the PTAB found unpatentable. *See* FWD at 29 (finding claim 1 unpatentable), 32 (finding claim 7 unpatentable). Each only adds a limitation related to the selection of one set of pixel data from two or more sets of pixel data in a given matrix/region. '339 patent at 11:21–24, 12:7–9.

FILED UNDER SEAL

Claims 5 and 8 overlap with limitations in unpatentable claim 7:

| Claims 5 and 8 Limitations | Previously-Invalidated Claim Limitations |
|---|---|
| Claim 5<br>"a pixel sequencer system receiving two or more sets of pixel data for each region and selecting one of the two or more sets of pixel data based on the sequence data"<br><br>Claim 8<br>"wherein selecting one of two or more sets of pixel data comprises selecting the pixel from a matrix of sets of pixel data" | Claim 7<br>"receiving frame data; generating optimized matrix data from the frame data; selecting one of two or more sets of pixel data based on the optimized matrix data; wherein receiving frame data comprises receiving an array of pixel data" |

Although claim 8 makes clear that the selected pixel data comes from "a matrix of sets of pixel data," that requirement does not materially differ from what already appears in the limitations of unpatentable claim 7. In particular, claim 7 describes "receiving frame data" that includes "an array of pixel data." '339 patent at 11:34–35. That "frame data" is used to generate the "optimized matrix data" based on which the "one of two or more sets of pixel data" is selected. *Id.* at 11:31–33. Accordingly, claim 7 already requires selecting a pixel (*i.e.*, one set of pixel data) from a matrix of sets of pixel data.

The PTAB's findings in the prior IPR proceeding confirm that the "selecting the pixel from a matrix of sets of pixel data" requirement of claim 8 does not materially alter the question of invalidity. FWD at 31. The PTAB found that one of the asserted prior art references discloses selecting pixel values from a "matrix," which satisfied the "selecting one of two or more sets of pixel data" limitation of claim 7. *Id.* As a result, the PTAB found claim 7 unpatentable. *Id.* at 32. Because the scope of claim 8 does not materially differ from claim 7 for purposes of invalidity, collateral estoppel applies.

Claim 5 differs only slightly from the portions of claims 7 and 8 described above. Claim 5 adds a "pixel sequencer system" that selects one set of pixel data from multiple sets "based on sequence data." '339 patent at 11:21–24. The '339

FILED UNDER SEAL

1   patent specification explains that the "pixel sequencer system" can, for example,

2   select pixels in a predetermined order (*e.g.*, matrix position (1,1) in the first frame,

3   matrix position (1,2) in the second frame, matrix position (1,3) in the third frame,

4   etc.). *Id.* at 6:47–57. The specification further explains that other suitable sequences

5   can be used. *Id.* at 6:57–60.

6        The PTAB considered one such suitable sequence as part of finding claim 1

7   unpatentable. *See* FWD at 25–27. Rejecting VSL's arguments to the contrary, the

8   PTAB found that one of the asserted prior art references discloses the selection of

9   "corner pixel values" from a matrix for transmission. *Id.* at 25 ("[T]he corner

10   coordinates of the newly created blocks would be used to select the values of the

11   pixels at those locations for transmission."); *see also id.* at 31 (finding claim 7

12   unpatentable because "selection of corner pixel values of a matrix for transmission

13   from all the pixels in a region teaches 'selecting one of two or more sets of pixel

14   data'"). This selection of corner pixels in a matrix satisfies the requirement in claim

15   5 of selecting a set of pixel data based on sequence data. Claim 5 does not

16   materially differ from claims 1, 7, and 8 for purposes of invalidity. *See Fellowes*,

17   2019 WL 1762910, at *4 (applying collateral estoppel to an unadjudicated claim

18   that added an "immediate shutdown" requirement because the PTAB's final written

19   decision determined that such a requirement was not a patentable innovation). It

20   therefore should be found invalid on the basis of collateral estoppel.

21       **C.**    **The Court Should Dismiss Vedanti's Patent Infringement Claim**

22             **for Patent Claims the PTAB Found Unpatentable**

23        The claim chart attached to Vedanti's Complaint includes infringement

24   allegations for all seven claims of the '339 patent that the PTAB expressly found

25   unpatentable: claims 1, 6, 7, 9, 10, 12, and 13. *See* Dkt. 1-4 (Claim Chart); FWD at

26   3–4, *aff'd Vedanti Licensing Ltd. v. Google LLC*, 756 F. App'x 994, 995 (Fed. Cir.

27   2019). It is well-settled that "a judgment of invalidity in one patent action renders

28   the patent invalid in any later actions based on the same patent." *MaxLinear*, 880

**FILED UNDER SEAL**

F.3d at 1376. This applies equally to administrative decisions by the U.S. Patent and Trademark Office, including in IPR proceedings. *Id.* Because the PTAB has already found claims 1, 6, 7, 9, 10, 12, and 13 unpatentable, Vedanti's patent infringement claim with respect to those patent claims should be dismissed.

> **D.   The Court Should Strike the Allegations Related to Google's Privileged and Confidential Attorney Notes Vedanti Improperly Included in Its Complaint**

In its Complaint, Vedanti improperly included copies and descriptions of five Attorney Notes authored by a Google in-house attorney. *See* Dkt. 1, ¶¶ 87–92, 108. Vedanti apparently has a collection of 23 such Attorney Notes in its possession, which it presumably obtained from VSL. *See id.* ¶ 87. As described below, these Attorney Notes reflect attorney-client privileged communications and/or attorney work product. Google's initial disclosure of the Attorney Notes to VSL was inadvertent, and Google has made repeated attempts to recover the materials; thus, privilege has not been waived. Accordingly, Google requests that the Court strike all references to the Attorney Notes, as well as the notes themselves, from the Complaint and remove the stricken information from the public docket.[7] The Court may do so either under Rule 12(f) or pursuant to its inherent powers.[8] *See supra* Section III.

---

[7] In the event that the Court grants Google's motion to dismiss this action in its entirety, Google requests that the Court simultaneously grant its motion to strike (as opposed to finding the motion moot), to ensure that Google's privileged information is removed from the public docket in this case.

[8] For example, the Court could find that the failure of Vedanti's counsel to comply with applicable California ethics law by filing its Complaint instead of informing Google that it was in possession of material that appeared to be privileged warrants striking the references to the Attorney Notes from the Complaint (or another remedy as the Court deems fits). *See Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 815–19 (2007) (affirming disqualification of attorney for failure to comply with ethical duty owed upon inadvertent receipt of attorney work product); *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656–57 (1999) (outlining ethical obligation of California attorney who receives material that appears to be privileged due to the inadvertence of another); California Rules of Professional Conduct, Rule 4.4. Importantly, a "reasonable belief the privilege holder waived the privilege or an exception to the privilege applies ***does not vitiate*** the attorney's *State Fund* duties." *McDermott Will & Emery LLP v. Superior Court*, 10 Cal. App. 5th 1083, 1092 (2017) (emphasis added).

**FILED UNDER SEAL**

1. **The Attorney Notes Reflect Privileged Attorney-Client Communications**

"The attorney client privilege is deeply rooted in American law and 'is the oldest of the privileges for confidential communications known to the common law.'" *Politte v. United States*, No. 07-CV-1950 JLS (CAB), 2010 WL 11512354, at *14 (S.D. Cal. Mar. 29, 2010) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Vedanti blatantly violated that long-standing principle when it included copies of the Attorney Notes in its Complaint. In determining whether materials are subject to attorney-client privilege, Courts in this District consider: (1) whether the communications constitute legal advice, (2) confidentiality, and (3) waiver. *Id.* The Attorney Notes are protected by the attorney-client privilege and the privilege has not been waived.

First, the notes clearly relate to the seeking and giving of legal advice.



. *See ChriMar Sys. Inc. v. Cisco Sys. Inc.*, 312 F.R.D. 560, 564 (N.D. Cal. 2016) (finding an email exchange between three in-house attorneys containing legal advice protected by the attorney-client privilege). Indeed, the notes

. Moreover, Vedanti states that the notes

. The Attorney Notes thus reflect legal strategies and advice.

**FILED UNDER SEAL**

Second, the attorney communications reflected in the notes, as well as the notes themselves, were clearly intended, or reasonably expected, to be confidential to Google. Google undoubtedly had an expectation that the notes would be treated as confidential, as evidenced by Google's numerous efforts to claw back the notes following their inadvertent disclosure to VSL. *See* Golueke Decl., Exs. A–C.

## 2.   The Attorney Notes Are Attorney Work Product

Work product immunity under Fed. R. Civ. P. 26(b)(3) applies to "documents and tangible things that are prepared in anticipation of litigation or for trial" by or on behalf of a party. The primary purpose of the work product rule is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co. v. U.S. District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989). Vedanti should not be allowed to exploit these notes. First, the notes were clearly prepared by or on behalf of Google. As Vedanti notes in its Complaint, the Attorney Notes were included in a file sent to it by Google. *Id*. ¶ 85–87. Second, Vedanti itself claims ████

████████████████████████████████████████████████████████████

████████████████████████████████████ Indeed, each of the Attorney Notes referenced in the Complaint contains attorney work product.  For example:

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

Vedanti also states that the notes were prepared in anticipation of litigation. In summarizing the notes, Vedanti claims that ██████████████████████████

**FILED UNDER SEAL**

1

██████████████████████████████████████████████

2  Thus, there appears to be no dispute that the notes are protected attorney work

3  product. *See Culpepper v. Consol. Container Co. LP*, No. 15-125-BAJ-RLB, 2016

4  WL 2599128, at *3 (M.D. La. May 5, 2016) (finding email communications were

5  protected pursuant to the work product doctrine where they "directly reference

6  potential litigation and the potential engagement and involvement of legal

7  counsel . . . .").

8
    **3.**     **Google Has Not Waived Attorney-Client Privilege or Work-
             Product Immunity for the Attorney Notes**
9

10  Attorney-client privilege and work product immunity have not been waived.

11  In cases of inadvertent disclosure of work product, courts determine waiver by

    considering the same factors as for waiver of attorney client privilege. *See Hartford*
12
    *Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 331–32 (N.D. Cal. 1985); *F.D.I.C. v.*
13
    *Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 381 (S.D. Cal. 2000). "In the Ninth
14
    Circuit, the inadvertent production of privileged documents is neither a necessary
15
    nor a sufficient condition for finding that the privilege was waived." *Politte*, 2010
16
    WL 11512354, at *16 (citations omitted). In analyzing waiver, Courts consider:
17

18         (1) the reasonableness of the precautions to prevent inadvertent
           disclosure; (2) the time taken to rectify the error; (3) the scope of the
19         discovery; (4) the extent of the disclosure; and (5) the "overriding
           issue of fairness."

20  *Id.* (citing *Hartford Fire Ins.,* 109 F.R.D. at 332). But these factors are merely a

21  "guide" and courts have been cautioned not to engage in "retrospective judicial

22  micro-management and second-guessing" because it "is impractical and unfair."

23  *U.S. ex rel. Bagley v. TRW, Inc*., 204 F.R.D. 170, 179 (C.D. Cal. 2001).

24  Google did not waive its privilege or immunity as to the Attorney Notes.

25  Upon learning of the inadvertent disclosure, Google promptly sought to claw back

26  the notes. Google sent VSL at least three written demands in 2011 to return the

27  notes upon learning of their disclosure. *See* Goluke Decl., Exs. A–C. In response,

28  Ms. Nash of VSL claimed that ████████████████████████████████ *Id.*,

**FILED UNDER SEAL**

1     Ex. C. Then, in an August 2014 California state court complaint filed by VSL and

2     others, plaintiffs blatantly ignored Google's explanation that the Attorney Notes

3     were privileged, and improperly referred to the notes in their complaint. *See Max*

4     *Sound, et al., v. Google Inc., et al.*, Case No. 114CV26231 (Santa Clara Super. Ct.).

5     Google's counsel promptly explained to plaintiffs' counsel that the notes were

6     privileged. Graves Decl., ¶¶ 3–5, Exs. B–C (August 2014 Letters from Google to

7     VSL). Plaintiffs' attorneys quickly agreed to dismiss the case, and did so in

8     September 2014. *Id*. ¶ 6. Then, plaintiffs in the *Eli Attia* case (and the same

9     attorneys from the 2014 Max Sound litigation) again tried to take advantage of

10    Google's inadvertent disclosure by including references to the Attorney Notes in a

11    proposed fourth amended complaint. Graves Decl., ¶ 7. Google swiftly informed

12    counsel in that case (yet again) that the Attorney Notes were privileged and

13    confidential. *Id*. ¶¶ 8–10, Exs. D–E. Attia ultimately filed the fourth amended

14    complaint without reference to the Attorney Notes. *Id.* ¶ 11.

15        As to the third and fourth factors, the scope and extent of Google's

16    inadvertent disclosure was minimal—23 Post-It Notes reflecting ████████████

17    ████████████

18        Further, to the extent Vedanti argues waiver due to the presence of the

19    Attorney Notes (or references thereto) in public forums or filings beyond the

20    Complaint, the availability of these notes to the public is a direct result of Vedanti's

21    and others' unethical dissemination of the confidential information, and cannot

22    fairly be relied upon by Vedanti. *See Smith v. Armour Pharm. Co*., 838 F. Supp.

23    1573, 1577 (S.D. Fla. 1993); *Hynix Semiconductor Inc. v. Rambus Inc*., No. C-00-

24    20905 RMW, 2009 U.S. Dist. LEXIS 67204, at *15 (N.D. Cal. July 29, 2009)

25    (citing *Smith*, 838 F. Supp. at 1577). "Recognizing that, in practical terms, the

26    contents of the document are no longer confidential is different from ruling that, in

27    legal terms, the client holding the privilege has lost the privilege because someone

28    else disclosed the document to the public." *Smith*, 838 F. Supp. at 1576.  The Court

FILED UNDER SEAL

should not reward Vedanti's flagrant disregard of Google's numerous claw back attempts and/or Vedanti's willful and persistent actions to ignore and undermine Google's asserted privilege and work product immunities.[9] Indeed, "in determining whether an inadvertent production of privileged material amounts to a waiver, the importance of the attorney-client privilege should not be ignored." *TRW*, 204 F.R.D. at 181. Google was not required to engage in extraordinary investigatory measures to assure that Vedanti was not misusing the Attorney Notes, which Vedanti was well-aware Google considered to be confidential, privileged, and attorney work product. Instead, Vedanti and its counsel were under an obligation not to undermine the protections properly afforded the Attorney Notes—an obligation that Vedanti has attempted to evade at every turn. Considerations of overriding fairness thus support Google's position that neither privilege nor work product immunity has been waived, and all references to the Attorney Notes should be stricken from the Complaint.

## V.   CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss Vedanti's patent infringement claim (count 1) and copyright infringement claim (count 2) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Google further requests that the patent infringement claim be dismissed with prejudice. In addition, Google respectfully requests that the portions of Vedanti's Complaint referencing the Attorney Notes (*i.e.*, Dkt. 1, ¶¶ 87–92, 108) be stricken from the Complaint and removed from the docket pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and/or this Court's inherent authority.

---

[9] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ther things, investigating the history, inadvertent disclosure, and prior misuse of the notes, collecting and reviewing Google's multiple prior requests for return of the notes, and preparing new claw back correspondence. Google took reasonable steps, in a reasonable period of time, and did not delay in addressing Vedanti's improper disclosure of the notes.

**FILED UNDER SEAL**

1 | DATED:  September 8, 2020

2

Respectfully submitted,

By: */s/ Robert W. Unikel*

3

Robert W. Unikel (IL Bar #6216974)
(*pro hac vice*)
4 | robertunikel@paulhastings.com
**PAUL HASTINGS LLP**
5 | 71 South Wacker Dr., 45th Floor
Chicago, IL 60606
6 | Telephone: (312) 499-6000
Facsimile: (312) 499-6100

7

Elizabeth L. Brann (CA Bar #222873)
8 | elizabethbrann@paulhastings.com
Ariell Nicole Bratton (CA Bar #317587)
9 | ariellbratton@paulhastings.com
**PAUL HASTINGS LLP**
10 | 4747 Executive Drive, 12th Floor
San Diego, CA 92121
11 | Telephone: (858) 458-3000
Facsimile: (858) 458-3005

12

Robert Laurenzi (NY Bar #3024676)
13 | (*pro hac vice*)
robertlaurenzi@paulhastings.com
14 | **PAUL HASTINGS LLP**
200 Park Avenue, 26th Floor
15 | New York, NY 10166
Telephone: (212) 318-6000
16 | Facsimile: (212) 318-6100

17

Tad Richman (CA Bar #268091)
tadrichman@paulhastings.com
18 | **PAUL HASTINGS LLP**
2050 M Street NW,
19 | Washington, D.C. 20036
Telephone: (202) 551-1700
20 | Facsimile: (202) 551-1705

21

*Attorneys for Defendant Google LLC*

22

23

24

25

26

27

28

**FILED UNDER SEAL**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 8, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any documents filed under seal will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

*/s/ Robert W. Unikel*
Robert W. Unikel